**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DENVER DIVISION**

| | |
|---|---|
| Taylor Diebert, individually and on behalf of her minor child, B.D., | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| Abbott Laboratories Inc. D/B/A Abbott Nutrition, | ) ) |
| *Defendant.* | ) |

Civil Action No. _____

JURY TRIAL DEMANDED

## <u>COMPLAINT</u>

Plaintiff Taylor Diebert ("Plaintiff"), individually and on behalf of her minor child, B.D., files this Complaint against Defendant Abbott Laboratories, Inc. D/B/A Abbott Nutrition. ("Abbott" or "Defendant"), and in support state the following:

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff, Taylor Diebert, is the mother of B.D., a minor.

2.      Defendant Abbott Laboratories, Inc., manufactures, labels, markets, distributes, and sells infant formulas under the Similac, Alimentum, and EleCare brands that have been recalled due to bacterial contamination.

3.      On February 17, 2022, the U.S. Food and Drug Administration ("FDA"), along with the Center for Disease Control ("CDC"), announced that it was investigating Defendant Abbott's Similac, Alimentum, and EleCare infant formula products manufactured at Defendant Abbott's facility in Sturgis, Michigan ("Sturgis Facility"), following several consumer complaints of Cronobacter sakazakii and Salmonella Newport contamination. The FDA's advisory notice told consumers to avoid purchasing or using Defendant Abbott's Similac, Alimentum, and EleCare, and Defendant Abbott subsequently initiated a voluntary recall of those products.

4.      Plaintiff, B.D., consumed Defendant's Recalled Product and suffered injury as a result of the contamination of Defendant's product.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of the parties, and the amount in controversy exceeds $75,000.

6.      Venue is proper in this district because a substantial portion of the acts and conduct giving rise to the claims occurred within this district.

## THE PARTIES

7.      Plaintiff is a citizen and resident of Douglas County, Colorado, and at all times relevant hereto, has been a resident of Douglas County. In or around early February 2022, Plaintiff received a sample of Defendant's product – Alimentum – from a pediatrician at Lone Tree Pediatrics in Lone Tree, Colorado.  Based on the false and misleading claims by Defendant, Plaintiff was unaware that Defendant's Alimentum product may be adulterated with Cronobacter sakazakii.  Plaintiff used the Defendant's product on the assumption that the labeling of Defendant's products were accurate and that the products were unadulterated, safe and effective. Plaintiff would not have used Defendant's Similac, Alimentum, and EleCare products had she known there was a risk the products may contain Cronobacter sakazakii.

8.      Defendant ABBOTT LABORATORIES, INC. D/B/A ABBOTT NUTRITION, is a Delaware Corporation with its principal place of business in 100 Abbott Park Road, Abbott Park, Illinois.  Defendant manufactures, markets, advertises, labels, distributes and sells the Recalled Product at issue in this litigation.

9. This Court has specific personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privileges and benefits of doing business in Colorado.

10. Defendant subjected itself to jurisdiction in Colorado by doing business in Colorado and by contracting with Colorado businesses and by performing such contracts in part in Colorado and by committing torts where one or more elements of the tort or one or more of the tortious acts occurred in Colorado.

## INTRODUCTION

11. The following infant formulas are manufactured, marketed, and sold by Defendant Abbott Laboratories:

- Similac. Similac is a brand of powdered infant formula produced by Abbott which Abbott promises will "give babies a strong start by helping to keep them fed, happy, and healthy." *See* Why Similac, https://www.similac.com/why-similac.html (last visited February 18, 2022). According to Abbott, Similac "is the #1 Pediatrician Recommended Brand for Immune Support." *Id.*

- Alimentum. Alimentum is a brand of powdered infant formula produced by Abbott for infants with lactose sensitivity which Abbott claims is "the #1 infant formula brand fed for cow's milk protein allergy in the US." *See* Alimentum Product Description, https://www.similac.com/products/baby-formula/alimentum-powder/19-8oz-can-4pack.html (last visited February 18, 2022).

- EleCare. EleCare is a brand of powdered infant formula produced by Abbott for infants who cannot tolerate intact or hydrolyzed protein due to conditions such as severe food

allergies or short bowel syndrome. *See* EleCare Product Information, https://elecare.com/ (last visited February 18, 2022).

12.     Abbott distributes these powdered infant formula products both nationwide and internationally.

13.     As mentioned above, on February 17, 2022, the FDA, in conjunction with the CDC, announced a warning to consumers to not purchase or use Recalled Product, stating: "Do not use recalled Similac, Alimentum and EleCare powdered infant formulas produced in Sturgis, Michigan."[1]

14.     As part of the warning, the FDA Deputy Commissioner for Food Policy and Response stated, "As this is a product used as the sole source of nutrition for many of our nation's newborns and infants, the FDA is deeply concerned about these reports of bacterial infections. We want to reassure the public that we're working diligently with our partners to investigate complaints related to these products, which we recognize include infant formula produced at this facility, while we work to resolve this safety concern as quickly as possible."[2]

15.     Specifically, the FDA announced that it is investigating consumer complaints of Cronobacter sakazakii and Salmonella Newport infections connected to powdered infant formula products produced by Abbott.

16.     The FDA has so far linked two infant deaths and multiple illnesses to Cronobacter sakazakii contamination of its Similac, Alimentum, and EleCare powdered infant formulas produced in the Sturgis, Michigan plant.

---

[1] https://www.fda.gov/consumers/powdered-infant-formula-recall-what-know (last visited March 16, 2022).
[2] https://thehill.com/policy/healthcare/public-global-health/594856-three-kinds-of-baby-formula-recalled-by-abbott/ (last visited April 28, 2022).

17. The initial recall notice included Similac, Alimentum, and EleCare powdered infant formula with the following characteristics:

- the first two digits of the code are 22 through 37; and

- the code on the container contains K8, SH or Z2; and

- the expiration date is 4-1-2022 (APR 2022) or later.

18. On February 17, 2022, Abbott announced a recall of its powdered infant formulas. However, the recall does not include a refund, reimbursement, or replacement for consumers who purchased or used Recalled Products.[3]

19. On February 28, 2022, the recall was expanded to include one lot of Similac PM 60/40 (Lot # 27032K80 (can) / Lot # 27032K800 (case)), which was also manufactured in Abbott's Sturgis, Michigan facility.

20. These products may contain Cronobacter sakazakii bacteria.

21. Per the CDC website, Cronobacter sakazakii is a germ that can live in very dry places. The germs can live in dry foods, such as powdered infant formula.

22. Cronobacter bacteria can get into formula powder if contaminated raw materials are used to make the formula or if the formula powder touches a contaminated surface in the manufacturing environment.

23. Cronobacter bacteria can cause severe, life-threatening infections, meningitis, and symptoms include: poor feeding, irritability, temperature changes, jaundice, grunting, and abnormal body movements. As set forth by the Centers for Disease Control and Prevention:

Infants (<12 months old): In infants, Cronobacter usually causes sepsis or severe meningitis. Some infants may experience seizures. Those with meningitis may

---

[3] Recall Notice, https://www.similacrecall.com/us/en/home.html (last visited March 16, 2022)

develop brain abscesses or infarcts, hydrocephalus, or other serious complications that can cause long-term neurological problems. The mortality rate for Cronobacter meningitis may be as high as 40%.[4]

Other sources have described the mortality rate reaching as high as 80%.[5]

24.    The FDA also received one complaint of an infant with Salmonella infection who consumed formula from Abbott's Sturgis, Michigan facility. However, they later concluded there is not enough information available to definitively link the illness with the recalled infant formula.

25.    The FDA then conducted several inspections, which uncovered numerous, egregious violations of statutes and regulations set forth herein in Defendant's manufacture, processing, packing, and holding of Similac, Alimentum and EleCare powdered infant formulas.

26.    As documented in the FDA Form 483 issued on September 24, 2019, Defendant failed to test a representative sample of an infant formula production aggregate of powered infant formula at the final product stage and before distribution to ensure that the production aggregate met the required microbiological quality standards.

27.    Subsequent inspections establish a pattern of Defendant's disregard of reasonable, responsible industry practices, as well as applicable statutes and regulations, with respect to manufacture, processing, packing, and holding of Similac, Alimentum and EleCare powdered infant formulas.  As documented in the FDA Form 483 issued on September 24, 2021:

    a.    Defendant failed to maintain a building used in the manufacture, processing, packing, or holding of infant formula in a clean and sanitary condition; and

---

[4] CDC.gov, https://www.cdc.gov/cronobacter/technical.html (last accessed on March 25, 2022).
[5] Norberg S, Stanton C, Ross RP, Hill C, Fitzgerald GF, Cotter PD. Cronobacter spp. in powdered infant formula. J Food Prot. 2012 Mar;75(3):607-20. doi: 10.4315/0362-028X.JFP-11-285. PMID: 22410240.

b.   Defendant personnel working directly with infant formula, its raw materials, packaging, or equipment or utensil contact surfaces did not wash hands thoroughly in a hand washing facility at a suitable temperature after the hands may have become soiled or contaminated.

28.   As documented in the FDA Form 483 issued on March 18, 2022:

a.   Defendant failed to set in place and/or maintain a system of process controls that cover all stages of infant formula processing to ensure the product does not become adulterated due to the presence of microorganisms (such as Cronobacter) in the formula or in the processing environment;

b.   Defendant further failed to ensure that all surfaces that contacted infant formula were maintained to protect infant formula from being contaminated with microorganisms, (such as Cronobacter);

c.   Defendant failed to document any determination as to whether a hazard to health exists due to contamination with microorganisms (such as Cronobacter);

d.   Defendant's personnel that worked directly with infant formula, its raw materials, packaging, equipment, or utensil contact surfaces failed to wear necessary protective apparel.

29.   Additionally, Abbott's own records indicate that, in June 2020, it destroyed products because of a previous Cronobacter contamination.

30.   This establishes that Abbott, at various times:

    a.   Had knowledge that its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant had been contaminated with microorganisms, (such as Cronobacter);

    b.   Failed to adequately test for Cronobacter in its powdered infant formula;

    c.   Failed to ensure numerous controls were in place to prevent contamination of its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant.

31.    The results of these investigations demonstrate a pattern of Defendant not only failing to take adequate, reasonable measures to protect the health and lives of infants consuming its powered infant formula products, but also failing to take even the common sense measures, such as washing hands, upon learning of the risk of contamination of its products with microorganisms.

32.    Defendant demonstrates an unwillingness or incapability to learn from its own misconduct, and from the historical misconduct of others engaged in the manufacture, processing, packing, and holding of infant formula that resulted in widespread, serious and often fatal harm to the same vulnerable population, such as the "swill milk" scandal during the 1850s in New York City.[6] Thousands of infants were reported to have died from bacterial infection after ingesting contaminated milk sold to their poor and middle class parents by unscrupulous distillers who fed the grain distillation byproduct to dairy cattle kept in fetid conditions.

---

[6] Tyler Moss, "The 19th-Century Swill Milk Scandal That Poisoned Infants With Whiskey Runoff," AtlasObscura.com (November 27, 2017) available at https://www.atlasobscura.com/articles/swill-milk-scandal-new-york-city (last accessed on Mar. 25, 2022).

33.     More recently, in September 2008, the deaths of infants and sickness of over 300,000 babies were traced to contamination of infant formula with melamine believed to have been used as a protein additive.[7]

34.     Further, a whistleblower report dated October 19, 2021, noted that violations taking place at the Sturgis Facility were "neither inadvertent nor minor in nature."[8] Attached as Exhibit A to this Complaint. Further findings from that report include:

- "On multiple occasions, and in various ways, records have been knowingly falsified… This included testing seals on empty cans…"

- "The Sturgis site performed a time code removal after the discovery of microorganisms ("micros") in a batch of infant formula. The remaining portion of the batch outside the time code removal was released without additional testing. On another occasion product was not re-called from the market even after management became aware of a nonconformity ("NC").

- "Aside from the mandate of FDA regulations, Abbott's inaction is directly at odds with the mandate of Sarbanes-Oxley mandating adequate internal controls and the Department of Justice's policy mandating effective compliance programs."

---

[7] Gossner CM, Schlundt J, Ben Embarek P, Hird S, Lo-Fo-Wong D, Beltran JJ, Teoh KN, Tritscher A. The melamine incident: implications for international food and feed safety. Environ Health Perspect. 2009 Dec;117(12):1803-8. doi: 10.1289/ehp.0900949. Epub 2009 Aug 6. PMID: 20049196; PMCID: PMC2799451.
[8] https://www.marlerblog.com/files/2022/04/Redacted-Confidential-Disclosure-re-Abbott-Laboratories-10-19-2021_Redacted-1.pdf (last visited May 4, 2022)

35.     Defendant's conduct therefore represents a repeated, conscious disregard for the safety and lives of among the most vulnerable individuals—infants—that rises to the level of recklessness, wantonness, and malice.

36.     In February 2022, Plaintiff used Similac Alimentum for her infant child after receiving a sample of it from her pediatrician's office.

37.     Upon information and belief, the container used by Plaintiff for her minor child match the tainted lots identified by the FDA advisory and subsequently recalled by Defendant.

38.     Plaintiff's infant child consumed the tainted infant product.

39.     Within less than 24 hours of the Plaintiff's infant taking the adulterated product, her child suffered immediate and severe injury as a result of consuming the tainted product.

40.     Plaintiff's infant child became irritable and displayed problems sleeping after consuming the tainted product necessitating medical intervention.

41.     Plaintiff's infant child's stool became discolored and bloody after consuming the tainted formula.

42.     As a direct and proximate result of Plaintiff B.D. ingesting the contaminated formula, Plaintiff B.D. has suffered injuries in the past and will continue in the future.

**First Cause of Action: Negligent Misrepresentation/Omission**

43.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

44.     Through its labeling and advertising, Defendant made representations to Plaintiff concerning the safety of their Similac, Alimentum, and EleCare Products.

45.    Defendant has a duty to provide accurate information to consumers with respect to their Similac, Alimentum, and EleCare Products as detailed above.

46.    Additionally, Defendant has a duty to not make false representations with respect to the safety of their Products.

47.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Products as detailed above.

48.    Such failures to disclose on the part of Defendant amount to negligent omission and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

49.    Plaintiff reasonably relied upon such representations and omissions to their detriment.

50.    By reason thereof, Plaintiff B.D. has suffered damages in an amount to be proven at trial.

## Second Cause of Action: Breach of Express Warranty

35.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

36.    As detailed above, Defendant, through its written literature, packaging and labeling, and written and media advertisement, expressly warranted that the Similac, Alimentum, and EleCare Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

37.    Plaintiff read and relied on these express warranties provided by Defendant in the packaging and written advertisements, including that the "infant formula" was a "ready to feed"

formula that "starts reducing excessive crying and colic symptoms in most babies within 24 hours, so your baby can start feeling better today."

38.     Defendant breached its express warranties because Similac, Alimentum, and EleCare Products were defective and not reasonably safe for their intended use.

39.     Defendant knew or should have known that the Similac, Alimentum, and EleCare Products did not conform to its express warranties and representations and that, in fact, the Products are not safe and pose serious health risks because they contain microorganisms, such as Cronobacter sakazakii.

40.     Plaintiff B.D. has suffered harm as a result of Defendant's breach of its express warranty regarding the fitness for use and safety of these Products and is entitled to damages to be determined at trial.

### Third Cause of Action: Breach of Implied Warranty

41.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

42.     Because the Similac, Alimentum, and EleCare Products contained Cronobacter sakazakii, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such infant formula products are used.

43.     Plaintiff used these Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

44.     The Defendant's Similac, Alimentum, and EleCare Products were not altered by Plaintiff.

45.     Plaintiff was a foreseeable user of the Products.

46.     Plaintiff used the Products in the manner intended.

47.     As alleged, the Defendant's Similac, Alimentum, and EleCare Products were not adequately labeled and did not disclose that they contain harmful microorganisms, such as Cronobacter sakazakii.

48.     The Products did not measure up to the promises or facts stated in the written literature, media advertisement and communications by and from Defendant.

49.     Defendant impliedly warranted that the Products were merchantable, fit and safe for ordinary use.

50.     Defendant further impliedly warranted that the Products were fit for the particular purposes for which they were intended and sold.

51.     Contrary to these implied warranties, the Products were defective, unmerchantable, and unfit for their ordinary use when sold, and unfit for the particular purpose for which they were sold.

52.     By reason thereof, Plaintiff B.D.  has suffered damages in an amount to be proven at trial.

### Fourth Cause of Action: Strict Product Liability – Failure to Warn

53.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

54.     Defendant knew or should have known that the Defendant's Similac, Alimentum, and EleCare Products contained Cronobacter sakazakii.

55.     Defendant had a duty to warn Plaintiff about the presence of microorganisms, such as Cronobacter sakazakii, in its Products.

56.     In addition, Defendant had a duty to warn Plaintiff about the dangers of the presence of harmful microorganisms, such as Cronobacter sakazakii, in its Products.

57.     Defendant knew that the risk of infection of microorganisms, such as Cronobacter sakazakii, from use of its products was not readily recognizable to an ordinary consumer and that consumers would not inspect the product for harmful microorganisms such as Cronobacter sakazakii.

58.     Defendant did not warn Plaintiff that Defendant's Similac, Alimentum, and EleCare Products contain harmful microorganisms, such as Cronobacter sakazakii, or about the dangers of the presence of microorganisms, such as Cronobacter sakazakii bacteria, in its Products.

59.     Plaintiff B.D. suffered damages by purchasing the Defendant's Similac, Alimentum, and EleCare Products in a manner promoted by Defendant, and in a manner that was reasonably foreseeable by Defendant. Plaintiff would not have used Defendant's Similac, Alimentum, and EleCare Products had she known they contained harmful microorganisms, such as Cronobacter sakazakii bacteria.

60.     Plaintiff was justified in her reliance on Defendant's labeling and advertising of the product for use as a safe infant formula.

61.     Plaintiff B.D. has suffered damages in an amount to be proven at trial.

### Fifth Cause of Action: Strict Product Liability – Manufacturing Defect

62.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

63.     The Defendant's Similac, Alimentum, and EleCare Products contained a manufacturing defect when they left the possession of Defendant. Specifically, the Products differ from Defendant's intended result or from other lots of the same product line because they contain harmful microorganisms, such as Cronobacter sakazakii bacteria.

64.     Plaintiff B.D. used the Products in a way that was reasonably foreseeable to Defendant.

65.     As a result of the defects in the manufacture of the Defendant's Similac, Alimentum, and EleCare Products, Plaintiff B.D. suffered damages.

66.      Accordingly, Plaintiff B.D. suffered damages in an amount to be proven at trial.

## Sixth Cause of Action: Negligence *Per Se*

67.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

68.     As documented in the FDA Form 483 issued on September 24, 2019, Defendant failed to test a representative sample of an infant formula production aggregate of powered infant formula at the final product stage and before distribution to ensure that the production aggregate met the required microbiological quality standards.

69.     As documented in the FDA Form 483 issued on September 24, 2021, Defendant failed to maintain a building used in the manufacture, processing, packing, or holding of infant formula in a clean and sanitary condition.

70.     As documented in the FDA Form 483 issued on September 24, 2021, Defendant personnel working directly with infant formula, its raw materials, packaging, or equipment or

utensil contact surfaces did not wash their hands thoroughly in a hand washing facility at a suitable temperature after their hands may have become soiled or contaminated.

71.     As documented in the FDA Form 483 issued on March 18, 2022, Defendant failed to set in place and/or maintain a system of process controls that cover all stages of infant formula processing to ensure the products do not become adulterated due to the presence of microorganisms, including Cronobacter, in the formula or in the processing environment.

72.     As documented in the FDA Form 483 issued on March 18, 2022, Defendant further failed to ensure that all surfaces that contacted infant formula were maintained to protect infant formula from being contaminated with microorganisms, including Cronobacter.

73.     As documented in the FDA Form 483 issued on March 18, 2022, Defendant failed to document any determination as to whether a hazard to health exists due to contamination with microorganisms, including Cronobacter.

74.     As documented in the FDA Form 483 issued on March 18, 2022, Defendant's personnel that worked directly with infant formula, its raw materials, packaging, equipment, or utensil contact surfaces failed to wear necessary protective apparel.

75.     The conduct set forth herein, including that documented in the FDA Form 483 reports represent Defendant's conduct in violation of the following statutes or regulations that caused Plaintiff B.D.'s injury, including the risk of infection and infection of life-threatening microorganisms:

> a. 21 U.S.C. § 331 - "The following acts and the causing thereof are prohibited: (a) The introduction or delivery . . . of any food . . . that is adulterated or misbranded. (b) The adulteration or misbranding of any

food . . . .(g) The manufacture . . . of any food . . . that is adulterated or misbranded;"[9]

b. 21 CFR § 106.5 (failing to maintain good manufacturing practices that are to be used in, and the facilities or controls that are to be used for, the manufacture, processing, packing, or holding of infant formula);[10]

c. 21 CFR § 106.10 (failing to ensure personnel washed hands);

d. 21 CFR § 106.20(a) (failing to maintain building in a clean, sanitary condition);

e. 21 CFR § 106.30(d) (failing to maintain instruments used to measure, regulate, control parameter);

f. 21 CFR § 106.30(e)(5) (failing to monitor the temperature in thermal processing equipment at a frequency as is necessary to maintain temperature control); and

g. 21 CFR § 106.30(g) (failing to install a filter capable of retaining particles 0.5 micrometer or smaller when compressed gas is used at a product filling machine).

---

[9] *See* 21 U.S.C. § 342 (A food shall be deemed to be adulterated (1) If it bears or contains any poisonous or deleterious substance which may render it injurious to health . . . or (4) if it has been prepared, packed, or held under insanitary conditions . . . .); and 21 U.S.C. § 343 (A food shall be deemed to be misbranded . . . if (1) its labeling is false or misleading. . . ).

[10] *See* 21 CFR 106.5(b) (The failure to comply with any regulation in this subpart in the manufacture, processing, packing, or holding of an infant formula shall render such infant formula adulterated under section 412(a)(3) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 350a(a)(3)) . . . .)

76.     Under 21 U.S.C. § 350a, an infant formula, including an infant formula powder, shall be deemed to be adulterated if such infant formula does not meet the quality factor requirements prescribed by the Secretary under subsection (b)(1), or (3) the processing of such infant formula is not in compliance with the good manufacturing practices and the quality control procedures prescribed by the Secretary under subsection (b)(2).

77.     The injury caused to plaintiffs by Defendant's conduct, which violated these statutes and regulations, was the type of injury that the statutes and regulations were designed to prevent.

78.     Additionally, Plaintiff B.D. was a member of the class of persons these statutes and regulations were intended to protect. Indeed, as set forth in 21 C.F.R. § 106.5, "compliance with these provisions is necessary to ensure that such infant formula … is manufactured in a manner designed to prevent its adulteration."

79.     As a result of Defendant's conduct in the manufacture of the Defendant's Similac, Alimentum, and EleCare Products violating the foregoing statutes and regulations, Plaintiff B.D. suffered damages in an amount to be proven at trial.

**Seventh Cause of Action: Violation of the Colorado Consumer Protection Act (CCPA), Colorado Revised Statutes ("C.R.S.") § 6-1-101, et seq.**

80.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

81.     Plaintiff B.D. was a consumer who used Defendant Abbott's contaminated Similac, Alimentum, and EleCare powdered infant formula primarily for personal use and thereby suffered ascertainable losses, including mental anguish, as a result of Defendant Abbott's acts and omissions in violation of the applicable consumer protection laws.

82.     Unfair methods of competition or deceptive acts or practices that were proscribed by law include the following:

    a.  Representing that goods or services had characteristics, ingredients, user benefits, or qualities that they did not have;

    b.  Advertising goods or services with the intent not to sell them as advertised;

    c.  Over-promoting infant formulas, including but not limited to over-promoting their safety; and

    d.  Engaging in fraudulent or deceptive conduct that created a likelihood of confusion or misunderstanding.

83.     Defendant Abbott violated consumer protection laws through their use of false and misleading representations and omissions of material facts relating to the safety of its contaminated Similac, Alimentum, and EleCare powdered infant formula.

84.     Defendant Abbott uniformly communicated the purported benefits of its contaminated Similac, Alimentum, and EleCare powdered infant formula while failing to disclose the serious and dangerous risk of using these products and the true state of the infant formula's safety, efficacy, and usefulness. Defendant Abbott made these representations to consumers, including Plaintiff, in the marketing and advertising described herein. Defendant Abbott's conduct in connection with its contaminated infant formula was also impermissible and illegal in that it was contaminated with harmful bacteria when sold and created a likelihood of confusion and misunderstanding because Defendant Abbott misleadingly, falsely, and deceptively represented and omitted numerous material facts regarding, among other things, the utility, benefits, safety,

efficacy, and advantages of its contaminated Similac, Alimentum, and EleCare powdered infant formula.

85.     Additionally, Defendant violated the CCPA knowingly and intentionally, and therefore, Plaintiff should also recover treble damages, as allowed by the law. *See* CRS § 6-13-104.

## Eighth Cause of Action: Plaintiffs Claim for Damages Incurred on Behalf of her Minor Child, B.D.

86.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

87.     Plaintiff, B.D. was a minor at all times referenced in this Complaint.

88.     As a direct and proximate result of Defendant's acts and/or omissions, Plaintiff B.D. suffered physical injuries.

89.     Plaintiff Taylor Diebert has a derivative claim for damages because her minor child, B.D., has sustained physical injuries due to the Defendant's conduct.

90.     As a result, Plaintiff Taylor Diebert has a legally recognized claim for damages and seeks reimbursement for medical expenses and other expenses incurred because of Plaintiff B.D.'s injuries.

91.     As a result of Defendant's conduct in the manufacture of the Defendant's Similac, Alimentum, and EleCare Products violating the foregoing statutes and regulations, Plaintiff suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and her minor child, B.A. pray for

judgment against the Defendant as to each and every count, including:

  a.  Actual damages in the amount to be determined at trial;

  b.  Exemplary damages sufficient to punish Defendant Abbott and deter it and others

      from future wrongful conduct;

  c.  Treble damages as allowed by law;

  d.  Attorneys' fees as allowed by law;

  e.  Costs and expenses as allowed by law;

  f.  Pre- and post- judgment interest as allowed by law;

  g.  Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


DATED: May 5, 2022

**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**

BY: _/s/ R. Jason Richards_
R. Jason Richards (CO Bar No.: 32791)
jrichards@awkolaw.com
E. Samuel Geisler, *pro hac vice* to be submitted
sgeisler@awkolaw.com
Caitlyn P. Miller, *pro hac vice* to be submitted
cmiller@awkolaw.com
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
***ATTORNEYS FOR PLAINTIFFS***